Good morning, your honors. Cheryl Pilot representing claimant Nathan Duckworth and the currency in question. Thank you. The question in this case is really pretty simple, and I like to basically who we are as Americans. The question is can an industrious, talented individual who is intent on building his business, learning the business, getting experience, and pursuing his goals, his hopes, his dreams, whether he can do that without interference and having his money taken by the government. Mr. Duckworth was doing absolutely nothing illegal. The evidence is overwhelming. The district court judge found that he was in pursuing a drug transaction scheme. Your honor, respectfully. I mean, I understand the theme of your argument, but didn't the district court find that the facts supported an opposite inference? Wonderful question, and I'm glad you asked that because there was no evidence. There was no evidence of what kind of transaction, what drug, with whom, what was planned. There was nothing in the vehicle that pointed to and if you do some quick calculations, you'll see he probably had upwards of 1,500 bills in currency. There was no attempt to conceal it. He had no drugs in the vehicle. There was no drug. There were particles that were deemed to be marijuana. I think the word is gleanings or something of that sort that were identified, and there was the district court found credible the testimony of the officer that he smelled marijuana in the vehicle. Okay, your honor. Well, you don't dispute that those are what the trial court found, do you? Your honor, there is the ability. Do you dispute that's what the trial court found? The finding on the gleanings, we dispute for clear error. I mean, they were never tested. They were never removed from the carpet. If you look at the pictures which are in the appendix, you can't tell what they are. They were two rows back from where Mr. Duckworth was driving. It was a rental car. Anyone could have left those at any point in time. That it makes it one data point from which the court can make a determination by preponderance of the evidence that this was associated drug money. And the fact of the matter is that just like the court could credit the officer, and please respond, but just like the court, it seems to me, just like the court could credit the officers smelling of marijuana based upon his experience of what marijuana smells like, you know, that the court could credit his assessment of what those gleanings look like. He said that's marijuana. And who's the court, nor myself, to question that if the court found him credible. Okay. Your Honor, this was a rental vehicle. We don't know who drove it beforehand. I'd also point out there was nothing to indicate marijuana had been smoked in the vehicle. The smell of marijuana is not an indication? Your Honor, please. There were no papers. There was no marijuana itself. There were no sort of leftover bits of burnt marijuana. There was nothing there to indicate that. I'm not saying the trooper maybe didn't pick up something with his nose that he thought was suspicious, but this was a rental car. I was just in a cab yesterday that smelled suspicious to me. Who knows? Outside the courtroom. Yes, Your Honor. There was nothing in there that we usually associate with drug activity. No packaging materials, no scales, no customer lists, no hidden compartments. No shrink-wrap money. I'm sorry? Shrink-wrap money. Okay. May I address that? Please do. Okay. First of all, shrink-wrapping is a convenient way to keep a bunch of loose bills together. I have never shrink-wrapped a dollar. I don't know what convenience is. Okay. Your Honor, there was significant evidence that the music promotion business operates a lot in cash. In fact, the district court found that there was no evidence to suggest the money itself was proceeds or was derived from drug deals. And let me ask you on that. It would seem to me that we're not bound by the district court's sorting of what theories are applicable here. We can affirm on any ground that's supported by the record. And the government pursued two theories, not just the one that the district court accepted. You agree with that, right? That's the law. Well, I do have a bit of a beef with that, actually. If the district court made an explicit finding, it rejected the notion that the money had come from any illicit activity. That was a finding. There was no cross-appeal. So I would think if they were challenging that finding, they should have cross-appealed. It's an alternative grounds for affirmance. There is case law that says, right, that we can affirm on any ground supported by the right? Your Honor, I do have a response to that as well, which is there's also no evidence that the money was derived from any drug deals. There is no evidence in this case as to any drug connection, as to any actual drugs. There's no drug paraphernalia. There is nothing in the vicinity associated with drugs. What there is are accoutrements and today, any one of you can, I don't know if you're on Facebook or any other social media, if you put in Building Bridges Entertainment, you will find Mr. Duckworth's business. He incorporated it several months before this stop. He was a nascent promoter in the beginning stages. He had another individual, had developed some skills. He promoted and engaged in the business as others did. The money you earned was the take that came in the door, minus the security. It's largely a cash business. One of the most famous musicians of all time was famous for dealing in cash, Aretha Franklin. She would not sing until you paid her in cash. We have a site on this, paid her in a purse with her up on the stage. It's the way these events operate. They are often one-time things and the people deal with each other on a cash basis. I credit that. Your statement certainly has some support, but the district court found that in these circumstances, given the individual in Denver, that was certainly a plausible explanation, but he didn't buy it. Should we reject his credibility determinations? He heard from your client. He heard from the Denver individual, correct? Well, Your Honor, I would return to... There was a trial. Okay. There are standards that are unique to these forfeiture determinations. It's a bench case. It's almost a common sense assessment. You look at the facts surrounding this seizure, how probative they are, and the weight to be accorded to each fact. I'm not wanting to suggest that this court needs to, or even could, visit such issues as the demeanor of those testifying. In fact, a lot of the evidence was submitted on depositions here. But what we can do is weigh the two kinds of evidence. No evidence of drug dealing, no scales, no papers, no accoutrements of the business in the vehicle, no customer lists, no hidden compartments. The money is in a backpack between the driver's seat and front passenger seat. No attempt to conceal it. Should we consider the prior history of drug-related arrests? Your Honor, that's ancient history. And the question is, is Mr. Duckworth allowed to move forward with his life? He had incorporated that business. There was very substantial testimony that he had promoted a number of events with getting advice about how to build this business. A woman who handled his taxes and had examined his financial affairs said that the $100,000 that he said was his, which was coupled with a $40,000 loan, that his business— It cannot be 404B evidence, though, the prior arrests? Well, yeah, Your Honor, we challenged whether it fits 404B, but I think the more important thing is 403, and that the unfair prejudicial effect very substantially outweighs any miniscule probative value. Ancient history. This was 2014, right? The seizure was in 2015. That doesn't fit my definition of ancient history. What dictionary are you referencing for that? I was about 20 years old. There was no conviction out of the 2014 stop. For rule 404B, does there have to be a conviction? Your Honor, what's the connection? What basis under— Drugs. Money. Car. Rental car. I would say the two acts are not similar. The stop in 2014 involved a much smaller amount of cash, not a very large amount of marijuana. What the evidence does support, and it is, frankly, Your Honor, pretty overwhelming, that he was in the promotion business. He had earned $19,000 at some of the events he promoted. Even Trooper McCord acknowledged that the music promotion business deals in cash. That's what he was doing. How about John Moshe? Didn't he testify at some point? He did. And he was in the music business as well, wasn't he? Yes. Did he indicate that cash was used regularly in that business? He said the use of cash was not unusual. It is sometimes used. Sometimes used. It wasn't a regular course of business, was it, according to his testimony? He said it was sometimes used. Sometimes used. Okay. He said it was not unusual, I think, was actually what he said. This is how he was compensated, how Mr. Duckworth was compensated in the events that he did for Mr. Romero. He was at an early stage in his career in the music promotion business. Your Honors, I can only tell you he's been overwhelmingly successful today. You can open Facebook, look at Building Bridges Entertainment, and see the wonderful events he has carried out. They are concerts, the one at Christmas is family-oriented. He's done a wonderful job in the community, and he has done exactly what he set out to do. We put the URLs in the brief. He is exactly who he said he was. And anyone can be tarred a bit, muddied up a bit with things in their past, but the reality is Mr. Duckworth was starting in a new career. He had incorporated Building Bridges Entertainment, and it is the same business he is operating today that you can readily find on the internet, on Facebook, and it's exactly what he set out to do. Are those things mutually exclusive? I mean, we can assume that he's running his business, but one theory that the government was pursuing was proceeds of drug activity. He could be using the drug money to further his business. I mean, those two things aren't mutually exclusive. Your Honor, there was testimony from Ms. Neighbors who stated that she had looked at his book, she had prepared the amended tax return, and her review of all of this confirmed that the earnings that he had received accounted for, or certainly could account for, the $100,000 he had. Meanwhile, there's no- Amended tax return. Query, what was the timing of that amended tax return? That amended tax return occurred right after the seizure, occurred right when he knew he was going to have to defend the basis for the money, right? Your Honor, I'm not going to deny that, but he attempted to make it right upon getting advice from legal counsel. The question is whether he has the right as an American to drive on a highway, carrying cash, to meet another person at roughly his level of experience, maybe less, but who's also getting into the promotion business, who's a welder, who had no recent drug convictions, one from 20 years ago, I believe. The evidence of drug connection is minuscule, and the evidence of involvement and connection to music promotion is substantial. And I've reserved nine seconds. You may. Your Honor, I appreciate the questions. Thank you, Ms. Pilot. Very good.  Good morning. May it please the Court. James Brown for the United States. Your Honors, we have a case here where the Court made factual findings that are not clearly erroneous. The Court, from those factual findings, made a legal finding that is affirmable on de novo review, and we're asking this Court to affirm the District Court's factual findings. And we're not restricted to the District Court's legal theory for resolving this case, right? You conceded on a proceeds theory and another theory as well. That's our view, Your Honor. The Court can affirm for any reason supported by the record, and we think there are two bases for affirmance here, either a proceeds theory or a furnishing theory. The District Court picked the furnishing theory, but we think the proceeds theory is indicators of drug trafficking, almost all of which have been recognized by this Court or others as indicating a connection to drug trafficking. And all of those factors together show that Mr. Duckworth has connections to drug trafficking, and that supports the inference that his currency that was found in the vehicle was also connected to drug trafficking. One thing that wasn't talked about by my colleague is Mr. Duckworth. One thing that's important is Mr. Duckworth initially lied to the troopers about his reason for the trip. He said he was going on a family vacation to Denver. He admitted that was not true. The District Court found that his second story about going to Denver on a business trip was also false. The Court spent about a page and a half knocking down that story. That story, as it stands on this record, is not credible. You have a factual finding in the record that Mr. Duckworth's story about going to Denver for a business trip is not credible. Of course, lying about the reason for the trip is an indicator recognized by this Court and others of drug trafficking. The second thing, the third— It's one small factor though, right? I mean, his view was he didn't have to tell you anything. You weren't entitled to know his business. That's correct, Your Honor. It's one small factor. But when we add it's like reasonable suspicion analysis, when we add lots of factors together, a clearer picture emerges. And we have that clear picture here. So we have those two lies to start with. Then we have the large amount of currency, which is recognized by this Court as being an indicator of drug trafficking. We have the fact that it was wrapped in cellophane, also recognized by this Court as an indicator of drug trafficking. But there's zero evidence of drug activity on either end of this road trip, either Denver or Kansas City. There's nothing, is there? Your Honor, we don't have evidence of a specific drug transaction, but we don't think we're required to produce evidence of a specific drug transaction. If the Court looks at United States fee 252— The money has to be transported in furtherance of a drug transaction, right? That's correct. And we think we can meet our burden with only circumstantial evidence linking the currency to drug trafficking in general without identifying a particular and specific drug transaction. That's the viewpoint taken by this Court in United States fee $252,300 in U.S. currency. The Court didn't require identification of a specific drug transaction. What the Court did do is it looked at several factors, many of which are the same factors we have here, and then found that those factors are consistent with drug trafficking. No, but you had individuals on both ends of this trip. You had cell phones. You had, what, Mr. Romero. You had the person who obtained the 50 percent interest loan, and they were all interviewed, deposed. Nobody gave a hint of a drug transaction here. I mean, there's no direct evidence. Why is that probative circumstantial evidence? Well, Your Honor, the cases say, and this Court has adopted the reasoning, not specifically but implicitly, in $252,300 in U.S. currency, that we don't have to identify a specific transaction. It's enough, and we can sustain our burden by presenting circumstantial evidence linking the drug currency, linking the currency to drug trafficking. And that's what we've done here. We've cited several cases to that effect in our brief. That's what several other circuits have found. This Court has never really stated specifically that the government has to identify a specific transaction. It's not stated that we don't. We just don't have any law on it in this circuit yet. And that wouldn't particularly be the case in a proceeds theory, wouldn't it be? I mean, if you were to find drugs, freak-wrapped cash that had marijuana on top of it, I know that's not these facts, but I'm saying you would need to have a specific transaction in order to know that that's proceeds, or at least by a preponderance, of drug trafficking, right? That's correct, Your Honor. And $252,300 in U.S. currency stands for that very proposition. You didn't need a specific drug transaction in that case. Yet, this Court made a finding that the government had established that money being transported was connected to illegal drug trafficking without any specific indicia of a specific transaction. And we think the same goes for furnishing theory. We don't have to show a specific transaction. Would it be nice? Yes. Would it help us to meet that preponderance standard? Yes. Is it necessary? No. So the premise of your theory, I take it either, as it relates to both the furnishing and the essentially that's rendering it not credible and then, you're able to hear me, right? Yes. Rendering it not credible and then talking about the things that were associated with drug trafficking that were in the car. Am I following? I mean, that's how you're making this out? Exactly, Your Honor. We don't have on this record a believable proposition that Mr. Duckworth was actually engaged in a business trip. The Court found that was not credible, so that leaves other explanations and the other explanations are provided by the circumstantial evidence of drug trafficking in the record. In addition to the factors that I've already mentioned. Why can't your colleagues as well, his subsequent behavior demonstrates that it was a legitimate music and he was involved in a legitimate music business, so why doesn't subsequent history, you know, bear out the explanation that he's offered here? Well, the Court could have accepted that, but it simply chose not to. It made a factual finding that his story was false, that it was not believable, that it was not a business trip. The Court made a non-clearly erroneous factual finding that this was not a business trip and the Court looked at his explanation said, look, it just doesn't make sense. He's driving to Denver with $144,000 in shrink-wrapped currency to do a music promotion with somebody he's never met in person. They don't have any venues, they don't have any artists, they don't have any cities, they don't have any locations. The Court found based on that that this was just sort of a made-up cover story, the second made-up cover story in this record. So while the Court could have taken another view of the evidence and it may have been permissible and plausible, it did not take that view here. And that's why we say our theory is, as Judge Holmes averted to, that we have this fact in the record that that business trip is false, that story is false. What's your position on the previous arrests and or convictions? We think the previous arrests are classic 404B. The defendant has four total arrests. He has a juvenile marijuana, he has a drug trafficking of cocaine from 1996, he has a revocation on that that was based on marijuana and a gun. He has the 2014 where you have nine pounds of marijuana that he admitted to the trooper, was in the vehicle, admitted some type of interest in it. I'm not sure exactly, I don't want to mischaracterize the record, but he admitted knowledge and then you had cash. So you have these four events. Now we say that those events are probative of motive and intent. All of those, I thought that the briefing really focused on the 2014 of it. The court didn't, we introduced all of those. The court said it didn't use the 2014, but it admitted the 2014. It didn't, did it admit the other stuff? It did admit the other stuff and it referenced those in its order as well. It did not, it admitted the 2014, but the court said I'm not using the 2014. Yeah, I know that. Okay. So we think they're probative. They're probative of motive and intent. My colleague says that the prejudicial value far outweighs the probative value, but under the Huddleston test, you look at how probative it is and if it's super probative, the prejudice has to be super, super prejudicial and here we don't have that. We have basically a pattern of conduct showing motive intent that the defendant has been engaged in drug trafficking type activities over a fairly long period of time. And as Judge Holmes pointed out, the 2014 incident was just one year before. It was actually seven months before. So that makes it very close in time and very similar in that they both involved drugs and currency. There is one other point I'd like to touch on that the district court adverted to, which we think really supports the furnishing theory that the court affirmed on, and that is that the defendant took out a $40,000 loan from Mr. Ali and agreed to repay the principal in 50% interest in two months. We think that supports the furnishing theory because that shows that the defendant, that there was an urgency here for Mr. Duckworth to make a lot of money very quickly with that $40,000. In this scenario, he didn't have anything lined up that he could have made money very quickly with to pay back that $40,000 with 50% interest in two months. There weren't any venues lined up, no artists lined up, no cities lined up. There was nothing lined up. The venture was little more than a concept. To make that money back, make a lot of money back very quickly, using that money to buy drugs and then resell them would be the most plausible option. And we think that when you look at it through that lens, in light of the other factors here, you have basically an overwhelming case that the currency is connected to drug trafficking and was intended to be used to buy more drugs or was proceeds. Other factors the court cited, you do have, as Judge Holmes pointed out, you had the marijuana gleanings in the car, you had the odor of marijuana from the car, and you also had the odor of marijuana on the currency. And in $252,300 in U.S. currency, this court said that that is highly probative of drug trafficking. You're talking about the drug sniff, I mean the dog sniff, right? Right. And I mean that's debatable whether that should be considered, isn't that correct? The court said it wasn't considering it for the furnishing theory. But as the court pointed out, the court can affirm based on any ground supported by the record, it was evidence that was admitted during the trial. It wasn't rejected, it was admitted evidence. It's there for consideration if the court wants to consider it. We're just pointing it out for that reason. In $252,300 in U.S. currency, this court stated that the smell of marijuana on currency is strongly probative of a link between the money and drug trafficking. So we're just pointing out that this court has on occasions prior stated that it is probative. Do you recall, I mean is there a testimony in the record about whether the dog is accredited and all that stuff that has played out in some of the case law as to whether this is reliable testimony? I'm not recalling that testimony. That doesn't mean that it's not there. My colleague I'm sure knows the answer to that question. I'm not recalling that testimony. Okay. But it's usually there. Well I wouldn't focus specifically on that so I don't know right now. So I only intended to concentrate on issue one. I would briefly talk about issue four if I could. Could I talk about issue one if issue one relates to this forfeiture matter? Let me just raise this standard of review issue. I was puzzled by what it seemed to be your standard. I mean I don't understand why you adopt the view that that is our law. I mean I looked at the two cases that you referenced in that connection. Both of those cases the government was pursuing a facilitation theory in part. So it would be logical that substantial connection would be at play. That's not what's going on here. So why is it, I mean I don't get that. Why do you believe that that necessarily is applicable here? Well, Your Honor, I think we were just looking at the person who wrote the brief was just sort of summarizing the court's law as we do when we write these briefs. And I don't know that our reliance on that point was the most prudent route to take. So for the reasons the court described, we probably don't need to rely on a substantial connection theory for the reasons that Your Honor has stated. Okay, I really don't have much time. If the court doesn't have any further questions, I think I'll just yield the remainder of my time. All right, thank you counsel. If you care for rebuttal, I'll give you 60 seconds. Your Honors, we do discuss the standard of review and the various standards of applying to these cases at some length on pages 23 and 24 of our brief. And this sufficiency question is reviewed de novo. We do believe that the substantial connection standard is an important part of this. Both of the cases that are relevant to that that are cited are cases in which the government was pursuing in part a facilitation theory. And a facilitation is the connection in the statute for applying substantial connections. We don't have a facilitation theory here, so why would those cases matter? Your Honor, we believe that that's the law. Even if you don't, there's no connection to anything. I mean, there is a complete absence of connection. And while certain inferences can be drawn about traveling on I-70 or having a lot of cash, in fact, there are entirely innocent explanations for them. And when you add up the facts on both sides, the evidence is overwhelming on the promotion side and scanty to non-existent on the drug side. So appreciate getting the extra 60 seconds. You're welcome. Thank you for your argument. We appreciate them. They're clarified things for us. Counselor excused and case shall be submitted. Thank you so much.